

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————————

No. 02-26-00411-CV

———————————————————

IN RE M.M.

---

Original Proceeding
281st District Court of Denton County, Texas
Trial Court No. 19-2889-367

---

Before Sudderth, C.J.; Birdwell and Bassel, JJ.
Memorandum Opinion by Justice Birdwell

# MEMORANDUM OPINION

This original proceeding was filed to challenge a criminal- and civil-contempt order arising out of Father's[1] violations of parts of the trial court's divorce decree governing possession of his and Mother's three children, the medical care of one of the children, and the transfer of Father's interest in certain retirement accounts. We conditionally grant relief.

## Background

Mother and Father were divorced in 2021. Three years after the trial court signed the decree, Mother filed a motion for a temporary restraining order (TRO) alleging that Father had threatened he would not return their three children to her at the end of his 2024 Christmas possession. The trial court denied the TRO application[2] but ordered that (1) "all provisions of the *Final Decree of Divorce* entered on December 3, 2021, specifically as to possession of and access to the children, not explicitly modified by Court order, shall remain in full force and effect" and (2) Father had to "surrender the children into the possession of [Mother] at **12:00**[ ]**P.M. on December 28, 2024**, pursuant to the *Final Decree of Divorce*."

---

[1]To protect the identities of persons who were minors at the time of the underlying events, we refer to the parties by relationship or aliases. *See* Tex. Fam. Code § 109.002(d); Tex. R. App. P. 9.9(a)(3).

[2]Mother filed her TRO application on December 18, 2024, but Father was not required to return possession of the children to her until December 28, 2024.

Father failed to return the children to Mother's possession as ordered in the decree[3] and the TRO-denial order. On December 30, 2024, Mother filed an "Ex parte Motion for Issuance of Writ of Habeas Corpus and Issuance of Writ of Attachment," which the trial court never ruled on.

Mother subsequently filed an enforcement proceeding, seeking to have the trial court hold Father in criminal contempt for failing to timely return the children to her possession.[4] She also sought to hold Father in criminal contempt for several other alleged violations of the divorce decree, including (1) failing to provide three separate medications for one of their sons, Darren, on a single date, (2) taking Darren to a medical provider "in violation of the order of the Court," which gave Mother the exclusive right to make invasive and noninvasive medical decisions for him, and (3) maintaining exclusive access to four retirement accounts awarded to Mother.

The trial court held three hearings on the enforcement petition from August to October 2025. In January 2026, the trial court signed a contempt order holding Father in criminal contempt for violating the divorce decree's possession order and holding him in civil contempt for the violations listed in (1)–(3) above. The trial court also awarded Mother attorney's fees of $23,670.21—$17,364.67 "related to enforcement of

_____

[3]Father later testified during one of the contempt hearings that he had been shorted possession time by Mother and thought that he could retain the children during his Christmas possession as make-up time.

[4]We reference Mother's first amended enforcement petition, which was the live pleading in the trial court.

the an [sic] order providing possession for access to a child" and $6,305.54 as child support, "directly associated with [Mother's] *Motion for Temporary Restraining Order* and *Motion for Writ of Habeas Corpus.*" The trial court ordered that the "cumulative judgment" be paid "in monthly increments of one thousand dollars ($1,000.00) per month until the total balance twenty three thousand six hundred seventy dollars and twenty one cents ($23,670.21) is paid in full."

For the criminal contempt only, the trial court suspended the commitment "for two (2) years provided [Father] abide[d] by the terms of suspended commitment as outlined" in the order; those conditions required Father to (1) "abide by all the orders contained herein," (2) "pay reasonable and necessary attorney's fees, court costs, and expenses ordered by the court," (3) "abide by all child support orders," (4) "comply with the Denton County Standing Orders," and (5) "not violate any court orders in force and effect in Cause No. 19-2889-367."

On June 17, 2026, Mother filed a motion to revoke the suspension of commitment, alleging that Father had failed to comply with the terms of the suspended commitment by failing to pay her attorney $1,000 monthly from February through June 2026. Father then filed a petition for writ of mandamus[5] in this court challenging the entire order as void. We stayed the trial court proceedings pending

---

[5]Mandamus is the appropriate procedural vehicle for Father's challenge to the order because he is not incarcerated. *See In re Roisman*, 651 S.W.3d 419, 433–34 (Tex. App.—Houston [1st Dist.] 2022, orig. proceeding); *see also In re Daugherty*, No. 05-18-00290-CV, 2018 WL 3031658, at *4 (Tex. App.—Dallas June 19, 2018, orig. proceeding) (collecting cases).

4

determination of the mandamus petition. At this court's request, Mother has filed a response, to which Father filed a reply.

## Issues in Petition

Father articulates the five issues in his petition as follows:

• Whether the contempt order is void because it does not state a single, certain term of confinement, imposing one length of incarceration in its sentence and a different length in its commitment.

• Whether the sole finding of criminal contempt is void because the order adjudicates the same conduct as both punishable contempt and unenforceable for lack of specificity.

• Whether the findings of civil contempt are void because the order adjudicates civil contempt without stating any condition by which the contemnor may purge it or any coercive sanction at all.

• Whether the findings of civil contempt are void under Slavin[6] because the underlying provisions are too indefinite to enforce as to some violations and command nothing at all as to others.

• Whether the award of attorney's fees is void because it was assessed as a single unsegregated sum tied entirely to a statutory authority that does not support most of the violations on which it rests.

## Standard of Review

Mandamus is an appropriate remedy to correct a void trial court order. *Urbish v. 127th Jud. Dist. Ct.*, 708 S.W.2d 429, 431 (Tex. 1986) (orig. proceeding); *In re Target Corp.*, No. 02-21-00120-CV, 2021 WL 3144481, at *2 (Tex. App.—Fort Worth July

---

[6]*Ex parte Slavin*, 412 S.W.2d 43, 44 (Tex. 1967) (orig. proceeding) ("It is an accepted rule of law that for a person to be held in contempt for disobeying a court decree, the decree must spell out the details of compliance in clear, specific and unambiguous terms so that such person will readily know exactly what duties or obligations are imposed upon him.").

5

26, 2021, orig. proceeding). If an order is void, the relator need not show that he does not have an adequate appellate remedy to obtain mandamus relief. *In re Sw. Bell Tel. Co.*, 35 S.W.3d 602, 605 (Tex. 2000) (orig. proceeding).

## Criminal-Contempt Provision

Father's first and second issues challenge the order's criminal-contempt provision. He contends in the first issue that this part of the order is fatally ambiguous.

After reciting its finding of criminal contempt, the order reads as follows:

### *Criminal Relief Granted – SENTENCE*

**IT IS THEREFORE ORDERED** that Respondent [Father] is committed to the county jail of Denton County, Texas, for a period of SIXTY days for the violations enumerated above.

### *Commitment*

**IT IS ORDERED** that Respondent, [Father], is committed to the custody of the Sheriff of Denton County, Texas, to be confined, as ordered by the order suspending commitment, until [Father] has served 180 days for the offenses set forth above.

"A contempt order 'cannot contain uncertainty or susceptibility of more than one construction or meaning.'" *In re Green*, 221 S.W.3d 645, 649 (Tex. 2007) (orig. proceeding) (quoting *Ex parte Glover*, 701 S.W.2d 639, 640 (Tex. 1985) (orig. proceeding)). "[T]o satisfy due process, the contempt order must clearly specify the punishment imposed by the court." *Ex parte Shaklee*, 939 S.W.2d 144, 145 (Tex. 1997) (orig. proceeding). A term of incarceration should not rest upon implication or

6

conjecture. *In re Watson*, 108 S.W.3d 531, 533 (Tex. App.—Houston [14th Dist.] 2003, orig. proceeding); *see also In re Rodman Excavation, Inc.*, No. 04-07-00317-CV, 2007 WL 1888385, at \*1 (Tex. App.—San Antonio July 3, 2007, orig. proceeding). The sheriff must be able to determine from the order itself how long the contemnor is to remain confined. *See In re Burcie*, No. 2-08-221-CV, 2008 WL 2639992, at \*2 (Tex. App.—Fort Worth June 30, 2008, orig. proceeding) (citing *Shaklee*, 939 S.W.2d at 145).

Here, the discrepancy in the criminal-contempt sentences makes it unclear which one applies; thus, the criminal-contempt part of the order is void. *See In re Stenson*, No. 14-06-00094-CV, 2006 WL 1331147, at \*2 (Tex. App.—Houston [14th Dist.] May 11, 2006, orig. proceeding). We sustain Father's first issue.[7]

If this had been the only void part of the contempt order, we could possibly reform the order to correct the error.[8] *See id.*; *see also Ex parte Roosth*, 881 S.W.2d 300,

---

[7]We need not address his second issue. *See* Tex. R. App. P. 47.1.

[8]Mother contends that the discrepancy in the sentences is a mere clerical error that can be corrected by a nunc pro tunc order, using the trial court's oral rendition on the record. She also claims that even if the contempt order itself is void for being too vague, we should vacate only the sentence part of the order and not the criminal-contempt finding itself. Because a corrected contempt and commitment order must be signed sufficiently close in time to the pronouncement of contempt to comport with due process, we will not deny relief for that reason. *See Ex parte Anderson*, 900 S.W.2d 333, 334–35 (Tex. 1995) (orig. proceeding); *In re Ruff*, No. 05-25-00553-CV, 2025 WL 1805807, at \*4 (Tex. App.—Dallas July 1, 2025, orig. proceeding).

Additionally, we note that even the trial court's written findings signed after the judgment contain the same discrepancy, leading us to the conclusion that reformation is not the proper remedy: "The Court finds that [Father] was committed to the county jail of Denton County, Texas, for a period of sixty days; [Father] was committed to

301 (Tex. 1994) (orig. proceeding). But because the civil-contempt parts of the order are also void, as we explain below, we decline to do so. *See Stenson*, 2006 WL 1331147, at *2; *In re Broussard*, 112 S.W.3d 827, 832 (Tex. App.—Houston [14th Dist.] 2003, orig. proceeding).

## Civil-Contempt Provisions

In Father's third issue, he argues that the civil-contempt provisions of the order fail to set forth on what conditions he may purge himself of the contempt or to include any coercive sanction, which is the very hallmark of civil contempt.

"[C]ivil contempt is 'remedial and coercive in nature'—the contemnor carries the keys to the jail cell in his or her pocket since the confinement is conditioned on obedience with the court's order . . . ." *In re Reece*, 341 S.W.3d 360, 365 (Tex. 2011) (orig. proceeding) (quoting *Ex parte Werblud*, 536 S.W.2d 542, 545 (Tex. 1976) (orig. proceeding)). Thus, "when civil contempt is imposed, the order must spell out exactly what duties and obligations are imposed and what the contemnor can do to purge the contempt." *In re Chaumette*, 439 S.W.3d 412, 416 (Tex. App.—Houston [1st Dist.] 2014, orig. proceeding); *see In re Luther*, 620 S.W.3d 715, 720 n.13 (Tex. 2021) (orig. proceeding) (citing *Chaumette* for this proposition). An order that does not "specify in

---

the custody of the Sheriff of Denton County, Texas, to be confined, as ordered by the order suspending commitment, until [Father] has served 180 days; and [Father's] sentence shall be suspended for two years provided he abided by the terms of suspended commitment as outlined below."

clear and unambiguous language what the contemnor is required to do to purge himself and escape the restraint on his liberty" is invalid. *Id.*

After listing each violation for which the trial court held Father in civil contempt,[9] the order contains the following section:

*Civil Relief Granted*

> **IT IS ADJUDGED** that [Father] is in civil contempt and sanctioned for each separate violation enumerated above as set forth herein.

Immediately thereafter, the order awards, and imposes a judgment for, attorney's fees.

It also provides for terms of payment of those fees:

> Payment of Judgment
>
> [Father] is **ORDERED** to make payment to [Mother] of the cumulative judgment in monthly increments of one thousand dollars ($1,000.00) per month until the total balance twenty three thousand six hundred seventy dollars and twenty one cents ($23,670.21) is paid in full. **IT IS FURTHER ORDERED** that the first payment of one thousand dollars ($1,000.00) shall be due and payable to [Mother] on November 1, 2025,[10] and like payment on the first of each month thereafter until paid in full.
>
> Payment
>
> **IT IS ORDERED** that all payments of attorney's fees and costs for the enforcement of the Court's child-related orders, assessed as child support, shall be made to [Mother's counsel's name and address] via cashier's check or personal check.

---

[9]We note that, for violations 3 and 5, although the headings noted, "**CIVIL CONTEMPT FOUND TRUE**," the paragraphs immediately following recited that Father was "in criminal contempt of court for" those violations.

[10]We note that the order was not actually signed until January 2026.

9

**IT IS ORDERED** that each party shall pay, when due, all fees charged to that party by the state disbursement unit and any other agency statutorily authorized to charge a fee.

Nothing in these provisions indicates that payment of the attorney's fees will purge Father of the civil contempt; instead, the suspension of the commitment for the criminal-contempt finding was conditioned on the payment of the attorney's fees.

Mother argues that "[t]he civil contempt findings serve to support the award of attorneys' fees and are purged on the payment of those fees." But if that was the order's intention—assuming it is even legally proper, *see, e.g.*, *In re S.B.*, No. 05-20-00338-CV, 2023 WL 6284703, at *24 (Tex. App.—Dallas Sept. 27, 2023, orig. proceeding) (holding void parts of enforcement order making payment of attorney's fees a condition of purging civil contempt and conditioning suspension of commitment and community supervision on contemnor's payment of attorney's fees)—that intention is not specified in clear and unambiguous language. *Cf. Werblud*, 536 S.W.2d at 546 (holding that an order that seeks to impose a penalty for completed acts of contempt and that is not made conditional on future compliance is a criminal-contempt order). And if no condition was necessary to purge the civil contempt, then the civil-contempt findings would, at best, be surplusage, further contributing to the order's ambiguity—why include these findings at all? And will the consequence of revocation of the suspension of commitment simply be incarceration for the criminal contempt? Or will the civil-contempt findings be used to attempt to keep Father

10

confined until all or part of the attorney's fees judgment is paid?[11] That these questions exist shows that the order is not sufficiently clear as to the import of the civil-contempt findings.

Accordingly, we hold that the civil-contempt parts of the trial court's order are likewise void. We sustain Father's third issue and need not address his fourth. *See* Tex. R. App. P. 47.1.

## Attorney's Fees

In his fifth issue, Father contends that the attorney's fees award is not authorized and that Mother failed to properly segregate her fees request.[12]

In her first amended enforcement petition, Mother sought attorney's fees on the following basis:

---

[11]*See* 187 Am. Jur. *Trials* 61, § 8 (2026) (noting that "[f]ollowing a determination of contempt, a court may impose sanctions that serve to punish the contemnor for a past transgression against the authority or dignity of the court" but that "[t]o serve the coercive purpose of civil contempt, the sanction imposed must be distinct from the purge provision and the valid legal requirement the court seeks to enforce" because "if the sanction imposed is a requirement to take the very action the court says will purge the contempt, then undertaking the purge action necessarily completes, rather than avoids, the sanction"); *cf. In re Davis*, 372 S.W.3d 253, 257 (Tex. App.—Texarkana 2012, orig. proceeding) ("[A]n order to remain incarcerated until an attorney's fee (that is unconnected to any precedent order to pay that was not obeyed—or indication that the fee was in the nature of a debt enforceable by contempt) is paid will not support an order of civil contempt.").

[12]Because the challenged order is interlocutory and not appealable, we disagree with Mother that appeal is an adequate remedy. *See Matter of Arguelles*, No. 13-22-00350-CV, 2022 WL 4242546, at *1 (Tex. App.—Corpus Christi–Edinburg Sept. 15, 2022, no pet.) (dismissing attempted appeal of order holding appellant in contempt and suspending commitment).

[Father] should be ordered to pay reasonable attorney's fees, expenses, and costs, and a judgment should be rendered in favor of the attorney and against [Father] and be ordered paid directly to the undersigned attorney, who may enforce the judgment in the attorney's own name. Enforcement of the order is necessary to ensure the child's physical or emotional health or welfare.

Attorney's fees should be assessed to include all fees incurred in relation to the underlying the [sic] enforcement and the enforcement of the writ of habeas corpus writ of attachment issued in this matter. The attorney's fees and costs should be enforced by any means available for the enforcement of child support including contempt but not including income withholding. Attorney's fees should be assessed to include all fees incurred in the enforcement of the writ of habeas corpus writ of attachment issued in this matter.

Texas Family Code Section 157.167(b) provides that in an enforcement proceeding,

[i]f the court finds that the respondent has failed to comply with the terms of an order providing for the possession of or access to a child, the court shall order the respondent to pay the movant's reasonable and necessary attorney's fees, court costs, and expenses in addition to any other remedy. If the court finds that the enforcement of the order with which the respondent failed to comply was necessary to ensure the child's physical or emotional health or welfare, the fees, costs, and expenses ordered under this subsection may be enforced by any means available for the enforcement of child support, including contempt, but not including income withholding.

Tex. Fam. Code § 157.167(b). "An award of attorney's fees under this statute is mandatory only if the court makes a finding that the respondent failed to comply with an order providing for possession or access, i.e., if the movant prevails on the motion to enforce." *Seymour v. Walker*, No. 14-25-00937-CV, 2026 WL 1830756, at *2 (Tex. App.—Houston [14th Dist.] June 25, 2026, no pet. h.).

12

Before entry of the judgment, Father objected to any award of attorney's fees

because the underlying claims do not pertain to child support. Awarding fees as child support in this case violates Texas Family Code §157.167. Furthermore, the evidence submitted is legally insufficient to sustain an award of attorney's fees because the fees have not been segregated into those which are recoverable by statute versus those which are not recoverable by statute. The award of fees is unreasonable where fees were awarded for filing unnecessary pleadings, in this case the temporary restraining order and the motion for habeas corpus. Finally, the Court did not make a finding that the enforcement of the order was necessary to ensure the child's physical or emotional health or welfare.[13] In fact there was no evidence that enforcement of the order was necessary to ensure the child's physical or emotional health or welfare.

Here, although the trial court found that Father had failed to comply with the possession-and-access terms of the decree by failing to surrender possession of his and Mother's three children at the time and place set forth in the decree, the trial court's subsequent contempt and commitment order is void. Thus, we likewise vacate the $17,364.67 attorney's fees award based on that now-void finding. *See In re Rivas-Luna*, 528 S.W.3d 167, 172 (Tex. App.—El Paso 2017, orig. proceeding).

The trial court's post-order findings show that the remaining attorney's fees—$6,305.54—were also imposed according to Family Code Section 157.167. Because the trial court did not make a finding in the TRO-denial order that Father had "failed to comply with the terms of an order providing for the possession of or access to a

---

[13]The order included a finding that "all attorney's fees and costs, below, incurred by [Mother] were reasonable and necessary to ensure *child's* emotional or physical health or welfare." [Emphasis added.] But the order did not specify which child or contain any reference by which this finding can be construed to apply to all three children.

13

child,"[14] nor did the trial court make such a finding in connection with Mother's habeas corpus filing, we hold that those fees were not authorized in this enforcement proceeding. *See* Tex. Fam. Code § 157.167(b); *cf. Sanders v. Merritt*, No. 03-17-00085-CV, 2017 WL 3378906, at *3 (Tex. App.—Austin Aug. 2, 2017, no pet.) (holding that trial court did not err by refusing to award Section 157.167(b) fees to appellee when it did not make Section 157.167(b) predicate finding).

We sustain Father's fifth issue.

## Conclusion

Because we have held that the trial court's January 12, 2026 "Order Holding Respondent [Father] in Criminal and Civil Contempt and Order of Suspended Commitment" is void and therefore that the attorney's fees judgment must be reversed, we conditionally grant the relief requested in Father's petition for writ of mandamus. We order the trial court to vacate the January 12, 2026 order, and we lift our June 23, 2026 stay of proceedings in the trial court. A writ of mandamus will issue only if the trial court fails to comply.

/s/ Wade Birdwell

Wade Birdwell
Justice

Delivered: August 6, 2026

---

[14]Indeed, the trial court could not have made such a finding in the TRO-denial order because it was issued before Father was required to return possession to Mother.